Isadore Bookstein, J.
Plaintiffs have instituted this action for a judgment declaring void a resolution of the Common Council passed on November 19, 1959, granting permission to defendant Smith to erect a slaughterhouse in the City of Troy and also declaring void the building permit issued to defendant, Smith, pursuant to such resolution and permanently enjoining defendant, Smith, from erecting the proposed slaughterhouse. In that action plaintiffs make this motion for a temporary injunction, pending the trial and determination in this action.
Plaintiffs advance three grounds for granting the temporary injunction.
Their first contention is that for the Common Council to grant the permission which it did, it was required to do so by an ordinance and not by a resolution and if that contention is correct, that the resolution did not comply (which concededly it did not) with the requirements of section 35 of the Second Class Cities Law, which regulates legislative acts.
There exists in the City of Troy an ordinance passed in 1849, dealing with slaughterhouses, which prohibits the erection of slaughterhouses within certain wards of the City of Troy, without the permission of the common council for that purpose first had and obtained.
The premises in question are "within one of the prohibited wards. Permission of the Common Council has been obtained by the resolution already referred to and not by an ordinance, complying with the requirements of section 35 of the Second Class Cities Law.
The question thus first presented is whether granting the permission was a legislative act or an administrative act.
Plaintiffs cite three decisions of the courts of this State, as sustaining their contention that granting permission is a legislative and not an administrative act. None of the three cases cited support their contention; on the contrary, they demonstrate that granting the permission reserved in the ordinance of 1849 is an administrative act.
Thus, in Yonkers R. R. Co. v. Hume (225 App. Div. 313) it was held that the granting or extension of a franchise was a legislative and not an administrative act and that accordingly in the granting of a franchise the Common Council had to comply with section 35 of the Second Class Cities Law. There the extension of the franchise was by a resolution and *346 the court held (p. 818), that “ the resolution was legislative in purpose, and, however characterized, constituted in legal effect an ordinance.”
In Matter of Collins v. City of Schenectady (256 App. Div. 389) the council in 1936 adopted an ordinance creating a department of public health and the positions Of commissioner Of public health and deputy commissioner of public health. In November, 1937, the Council adopted a resolution adopting a budget for 1938 and omitted the position of deputy commissioner of public health and failed to appropriate any salary therefor. In March, 1958, the Council adopted an ordinance purporting t'o recreate the position of deputy commissioner Of public health and make an appropriation for the payment of such salary from March 1, 1958 to December 31, 1958.
There the court said (p. 391): “A city budget is merely evidence of financial, not of legislative acts. * * * The creation of the budget, the matters therein contained, and their readjustment are exclusively matters for the administrative Officers of the city. ’ ’
In that case, the city contended that the omission of the position of deputy commissioner of public health and any sáláry appropriation therefor in the city budget constituted, in law, the abolition of Such position. The court held otherwise.
In disposing Of the case, Contrary to the city’s Contention, the court said (pp. 391-393):
“Upon adopting the optional city form of government the council of the city of Schenectady was empowered to create, rearrange and abolish positions only by ordinance. (Law's of 1914, chap. 444, § 37.) The council may not act in these respects by mere resolution unless of course the resolution is passed with all the formalities required in the enactment of an ordinance. It Cannot be seriously contended that the resolution adopting the budget in the instant case may be treated as an ordinance. It is neither SO labeled nor Was it adopted With the Solemnities surrounding the enactment of an ordinance. The Second Class Cities Law (§ 35) provides that no ordinance Shall bé passed by the council on the Same day in which it is introduced except by unanimous consent. After its passage every ordinance shall be separately engrossed (Second Class Cities Law, § 38) and recorded by the clerk in a book kept for that purpose. (Second Class Cities Law, § 39.) Nbnfe of these "requirements was observed in the adoption of the resolution before us.
“ The distinction between a resolution and an Ordinance is that á resolution is an order of the council of a special and tém *347 porary character while an ordinance prescribes a permanent rule of government or conduct. (2 Dillon, on Municipal Corporations [5th ed.], § 571.) It has also been said that an ordinance is a continuing regulation — a permanent rule of government, while a resolution is usually declared not to be the equivalent of an ordinance, but rather an act of a temporary character not prescribing a permanent rule of government, but is merely declaratory of the will of a corporation in a given matter and in the nature of a ministerial act. (43 C. J. 519.)
‘ ‘ The statute before us makes it mandatory that an office be created or abolished only by ordinance. When a statute provides a mode of procedure for municipal councils designed to protect the citizens and taxpayers from hasty and ill-considered legislation or to enforce publicity in the actions of the council the mode of procedure thus prescribed must be strictly observed. Such statutory provisions constitute conditions precedent, and unless an ordinance or resolution is adopted in compliance with the conditions and directions thus prescribed it will have no force. (19 R. C. L. pp. 888, 889.)
‘ ‘ When the statute requires that an act of a municipality be done in the form of an ordinance, or if such requirement is implied by necessary or clear inference, the act can only be done in that form, or perhaps its legal equivalent, and a resolution, especially if not adopted with all the formalities of an ordinance, is not sufficient. (2 Dillon on Municipal Corporations [5th ed.], § 572.) In McQuillin on Municipal Corporations ([2d ed.], vol. 2, § 514) it is said that ‘ if the office is created by ordinance it can only be abolished by ordinance and not by resolution. ’
‘ ‘ If the mode of the exercise of the power by a municipal corporation is not prescribed by statute the power may be exercised by resolution as well as by ordinance or order. Where, however, the statute prescribed that the method for exercising the power shall be by ordinance no other method than that so prescribed will suffice to give validity to the action of the municipal governing body. In such case neither a resolution nor a mere verbal motion will suffice. (43 C. J. pp. 250, 251.) ’ ’
The case of City of Albany v. Newhof (230 App. Div. 687, affd. 256 N. Y. 661) is squarely in point with the situation existing here and is determinative of the first contention raised by plaintiffs adversely to them.
In that case, it appears that the City of Albany enacted an ordinance substantially identical to the Troy ordinance of 1849. The Albany ordinance prohibited the slaughtering of cattle within a described territory without the consent of the *348 Common. Council. The City of Albany instituted an action for an injunction to restrain defendant from slaughterhouse operations within the proscribed territory. The defendant contended that the ordinance was unconstitutional. The Appellate Division of this Department upheld the constitutionality of the ordinance as a legislative act which the City of Albany was authorized to enact both by the Legislature and the Constitution. But, so far as the permission to be granted by the Common Council under the ordinance was concerned, such permission it declared expressly to be an administrative act.
That court said (pp. 688-689): “Slaughtering cattle is a proper subject of municipal regulation. It is a power which rests in the State and may be delegated to a municipality. (Slaughter-House Cases, 83 U. S. 36, 62, 63; 2 Dillon Mun. Corp. [5th ed.] p. 1048.) Such an ordinance is valid, though the city council acting in its legislative capacity placed the dispensing power in itself. (Matter of Larkin, Co. v. Schwab, 242 N. Y. 330, 334; Fischer v. St. Louis, 194 U. S. 361.) Nor is there discrimination in that consent to slaughter cattle within a restricted district depends upon the act of the common council as an administrative body. As said in the Larkin Case {supra), speaking of the ordinance then being considered: ‘ It makes a general rule, but maintains the right to create exceptions. It does not deny to any person the equal protection of the laws nor deprive him of liberty or property without due process of law. * * * It assumes that the council will exercise its discretion honestly, without unreasonable discrimination against particular persons or classes, and solely as the result of decision that special circumstances dictate exception to general rule. The purpose of the statute is to authorize discrimination on reasonable grounds, for the purpose of granting consent. An applicant is deprived of his rights only when unreasonable discrimination is shown to dictate the refusal. The courts may not interfere with discretion as to when exception shall be made, nor formulate standards to be used in the exercise of that discretion; they may interfere only when it is clearly shown that refusal is based solely upon grounds which as matter of law may not control the discretion of the council. ’ ’ ’
Indeed, in that case, the Appellate Division restrained the City of Albany from enforcing its judgment, until defendant had an opportunity to apply to the Common Council “ acting as an administrative body ’ ’ for the permission which the ordinance permitted it to grant.
See, also, Kij v. Aszkler (163 Misc. 63) as to distinction between an ordinance and a resolution. *349 The second contention advanced by plaintiffs is that the building permit is void as in contravention of the Zoning Ordinance of the City of Troy. That ordinance divides the City of Troy into eight classes of zones as shown on a building zone, map which accompanies the ordinance and is declared thereby to be a part thereof. On that map, the property for which the building permit was issued was included in a category designated “ Public Buildings ”. The site was formerly occupied by a public school building, which fell into disuse and the parcel thus designated was sold by the City of Troy to defendant Smith, who caused the public school building to be demolished and on its site seeks to erect the building for which the permit in this case was granted. It would, therefore, appear that the parcel in question was never classified under the zoning ordinance ; that it was excluded from classification when labeled on the map ‘ ‘ Public Buildings ”, since there is no such zone classification among the eight zones classified in the zoning ordinance. Plaintiffs’ contention is to the effect that when the property ceased to be used as a public building it automatically fell within the zone of surrounding property, while defendants contend that the property was never classified in any zone, and that it cannot be regarded as falling within some existing zone shown on the map, by implication.
In Matter of 440 East 102nd Street Corp. v. Murdock (285 N. Y. 298), ,the Court of Appeals held as quoted from paragraph 1 of the headnote: “ Zoning laws which curtail and limit uses of real property must be given a strict construction, since they are in derogation of common-law rights, and provisions thereof may not be extended by implication.” (See, also, City of Albany v. Anthony, 262 App. Div. 401, to same effect.)
Passing the second contention of plaintiffs for the moment, we shall consider then the third contention, to wit, that the resolution of November 19, 1959 violated the procedural rules adopted by the Common Council. Bule VI of those rules as amended provides, so far as pertinent, that no resolution ‘ ‘ proposed to be passed shall be presented for consideration by the Common Council, unless it shall have been open to public inspection in the office of the Corporation Counsel for a period of twenty-four hours preceding the meeting. ’ ’ There is no factual statement made in any of the moving affidavits that this rule was violated. There does appear in the affidavit of Joseph W. Graham the statement, upon information and belief, that the resolution was not made available to the minority until 1:00 p.m. of November 19, 1959. That, however, does not establish that it was not open to public inspection for 24 hours before the meeting of November 19, 1959. On the contrary, the affidavit *350 of the Corporation Counsel unequivocally states that “ all of the proceedings taken * * * by the Common Council to date have been regular, proper and in accordance with * * * the Rules of the Common Council ”, which necessarily means a positive statement by him under oath that the resolution was open to public inspection for 24 hours preceding the meeting at which it was acted upon.
It is elementary that before so drastic a remedy as a temporary injunction may be granted, the right thereto must be clear and convincing.
In. Stockton v. City of Buffalo (108 App. Div. 170) the court said (pp. 173-174):
Si The general principle governing the granting of preliminary injunctions in actions of this kind is that the plaintiff must clearly show that ‘ the official action complained of was illegal’ (Abraham v, Meyers, 29 Abb. N. C. 384); that ‘ the plaintiff’s rights must be certain as to the law and the. facts ’ (Noonan v. Grade, 49 N. Y. Super. Ct. 116); that‘ there is a clear violation of law * (People v. Mayor, etc., of New York, 32 Barb. 102).
‘ • Upon this application the plaintiff has not established that ‘ clear violation of law ’ which would authorize the issuance of an injunction.”
As to the second and third contentions of plaintiffs, the quotation from the Stocklon case (supra) fully applies.
This court is constrained to deny the motion for a. temporary injunction, and to leave the determination of the rights of the parties f‘ as to the law and the facts,” to a trial of the action. Submit order.