24-2654-cv
*Donner v. Der Spiegel GMBH & Co. KG, et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of October, two thousand twenty-five.

PRESENT:     RICHARD C. WESLEY,
             SARAH A. L. MERRIAM,
             MARIA ARAÚJO KAHN,
                  *Circuit Judges*.

_____

REBECCA DONNER,

    *Plaintiff-Appellant*,

       v.                                                      24-2654-cv

DER SPIEGEL GMBH & CO. KG; SPIEGEL-VERLAG RUDOLF AUGSTEIN GMBH & CO. KG.,

    *Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT:          NATHAN A. HOLCOMB, New York, NY.

FOR DEFENDANTS-APPELLEES: Elizabeth A. McNamara, Davis Wright Tremaine LLP, New York, NY.

Appeal from a September 5, 2024, judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION,** the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Rebecca Donner appeals from the District Court's order dismissing her complaint against defendants-appellees Der Spiegel GMBH & Co. KG and Spiegel-Verlag Rudolf Augstein GMBH & Co. KG (together, "Der Spiegel"), which are German media companies, for lack of personal jurisdiction. *See Donner v. DER SPIEGEL Gmbh & Co. KG*, 747 F. Supp. 3d 681 (S.D.N.Y. 2024). Donner, an author and citizen of New York, brought this action against Der Spiegel asserting in the amended complaint that Der Spiegel defamed her through statements made in an article about Donner's book, *All the Frequent Troubles of Our Days*. Der Spiegel moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[1] Donner cross-moved to transfer venue. The District Court granted Der Spiegel's motion, holding that it lacked personal jurisdiction over Der Spiegel under New York's long-arm statute, Civil Practice Law and Rules ("CPLR") §§302(a)(1), 302(a)(4), and denied Donner's cross-motion to transfer venue. Donner appealed.

---

[1] Der Spiegel alternatively moved to dismiss under Rule 12(b)(3) for improper venue and under the doctrine of forum non conveniens. Those alternative bases for dismissal are not before us on appeal.

2

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND

"We review a district court's dismissal of an action for lack of personal jurisdiction de novo." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). We "constru[e] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[e] all doubts in the plaintiff's favor." *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276 (2d Cir. 2024) (citation and quotation marks omitted).

The facts set forth herein are drawn from the amended complaint and the declarations and exhibits submitted with the parties' cross-motions. *See id.* Donner authored *All the Frequent Troubles of Our Days*, a biography of her great-great-aunt who moved from America to Germany to join the resistance against Hitler. The book was published in 2021; in 2022, it was translated into German. On July 22, 2022, while Donner was living temporarily in California, she was contacted by an Arizona-based journalist working for Der Spiegel, a German news magazine, about a possible profile. Donner agreed and ultimately traveled to Berlin to be interviewed for the profile by a Germany-based journalist for Der Spiegel. The Arizona-based and German-based journalists co-authored an article about Donner's book, which Der Spiegel published in print and online; it was titled "Pure Fantasy" in the print edition and "How Much Poetry Is There in a Historical Nonfiction Book?" in the online edition. J. App'x at 25. Donner alleges that the article contains defamatory statements about her.

As pertinent to the jurisdictional question before us, both Der Spiegel entities are

3

organized under German law and headquartered in Germany. Der Spiegel contracts with "a third-party German service provider called IPS Pressevertrieb ('IPS'), which buys copies of *Der Spiegel* in Germany and sells them to international partners." J. App'x at 46. In turn, "IPS partners with a company called Data Media Inc., located in Buffalo, New York, to market and manage subscriptions within the United States." *Id.* "Data Media operates as the 'Known Office of Publication' for *Der Spiegel*."[2] *Id.* at 47. Der Spiegel's main United States office is located in Washington, D.C.; at one time, it maintained an office in New York, but it decided in 2020 to close that office. *See id.* at 49.

With respect to distribution, Donner alleges that the print edition of Der Spiegel is "sold at international newsstands in New York City, including Casa Magazines (22 8th Avenue), Soho News International (186 Prince St.), and International News & Magazines (302 E. 86th St.)."[3] *Id.* at 17. The print edition "appeared in Issue 38/2022 of *Der Spiegel*," and "17 copies of th[at] issue were sold from newsstands in New York, as compared to 128,857 total copies sold worldwide." *Id.* at 48. As for online access, Donner alleges that Der Spiegel's online subscription service, SPIEGEL+, is marketed "through an interactive website to users around the world, including in the United States." *Id.* at 17. U.S. subscribers are "invited [to] enter payment details for PayPal or

---

[2] The United States Postal Service "requires the maintenance of a 'Known Office of Publication' to authorize mailing privileges for periodicals." J. App'x at 47. USPS defines a "Known Office of Publication" as "a public office where normal business of the publication is conducted during normal posted business hours." *Id.* at 16.

[3] The magazine was available at six newsstands in New York. *See id.* at 48.

4

Visa in order to obtain access to SPIEGEL+." *Id.* Donner alleges that "[t]he online version of [the] article at issue in this case was behind the paywall on *Der Spiegel*'s website, with access limited to subscribers who had purchased a SPIEGEL+ online subscription." *Id.* at 18.

## DISCUSSION

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Best Van Lines*, 490 F.3d at 242 (citation and quotation marks omitted). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (citation and quotation marks omitted) (alteration adopted). A plaintiff must first demonstrate that personal jurisdiction is appropriate under the forum state's long-arm statute; if it is, she must next show that the exercise of jurisdiction "comports with the requisites of due process." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citation and quotation marks omitted).

Accordingly, to determine whether the United States District Court for the Southern District of New York has personal jurisdiction over Der Spiegel, "we look first to the law of the State of New York, in which the district court sits." *Best Van Lines*, 490 F.3d at 242 (citation omitted). "The reach of New York's long-arm statute . . . does not coincide with the limits of the Due Process Clause." *Id.* at 244; *see also* David D. Siegel & Patrick M. Connors, *N.Y. Prac.* §84 (6th ed. 2018). Thus, if jurisdiction is improper

5

under New York's long-arm statute, CPLR §302, we need not reach the due process inquiry. *See id.* at 242.

On appeal, Donner contends that the District Court erred in concluding that it lacked personal jurisdiction over Der Spiegel pursuant to CPLR §§302(a)(1) or 302(a)(4). We disagree.

## I. CPLR §302(a)(1)

Under CPLR §302(a)(1), a federal court sitting in New York "may exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent[] transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR §302(a)(1). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines*, 490 F.3d at 246 (citation omitted); *see also Johnson v. Ward*, 4 N.Y.3d 516, 519 (2005). "Courts look to the totality of the defendant's activities within the forum to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity' satisfying the first part of the test." *Best Van Lines*, 490 F.3d at 246 (citations omitted). "As for the second part of the test, [a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* (citation and quotation marks omitted); *see also SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012). Donner has not met her burden under either prong.

6

*First*, Der Spiegel does not "transact business" within New York for purposes of Donner's defamation action. "New York courts construe 'transacts any business within the state' more narrowly in defamation cases." *Best Van Lines*, 490 F.3d at 248 (quoting CPLR §302(a)(1)). Transacting business does not "include mere defamatory utterances sent into the state." *Id.* (citation and quotation marks omitted). "In other words, when the defamatory publication itself constitutes the alleged 'transact[ion of] business' for the purposes of section 302(a)(1), *more than the distribution of a libelous statement must be made within the state* to establish long-arm jurisdiction over the person distributing it." *Id.* (citation and quotation marks omitted) (emphasis added). Put simply, "where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers," New York courts have found jurisdiction "only where the conduct also included something more." *Id.* at 249.

Donner contends that Der Spiegel "transacts business" in New York because it "use[s] a 'Known Office of Publication' in Buffalo, New York to distribute print magazines throughout the United States," and "use[s] an interactive website to sell [its] online SPIEGEL+ service to subscribers in New York." Donner Br. at 15, 17. Those allegations, however, are insufficient to establish the "something more" required under New York law.

With respect to the USPS Known Office of Publication, Der Spiegel does not own or otherwise directly operate out of the Buffalo location. Instead, Der Spiegel contracts with a third-party, IPS, which buys copies of *Der Spiegel*; IPS, in turn, partners with Data Media Inc., another third-party entity with which Der Spiegel does *not* contract, which

7

operates the Known Office of Publication and markets and manages subscriptions within the United States. Even accepting that there is a link – however attenuated – to Der Spiegel, the mere distribution of Der Spiegel's publications through the Buffalo location is insufficient to establish jurisdiction over Der Spiegel in New York. *See Best Van Lines*, 490 F.3d at 248 ("[M]ore than the distribution of a libelous statement must be made within the state."). The fact that SPIEGEL+ is accessible by paid subscribers in New York (and worldwide) is likewise insufficient: "[T]he posting of defamatory material on a website accessible in New York does not, without more, constitute 'transacting business' in New York." *Id.* at 250 (citation omitted) (alteration adopted).

Moreover, Donner has not alleged that any of the work associated with the article occurred in New York, so as to establish the requisite "something more." Donner acknowledges that the article was authored by Der Spiegel employees living in Arizona and Germany; and Donner was living in California at the time of Der Spiegel's outreach to her and traveled to Berlin to be interviewed by one of the article's authors. The marked absence of affirmative conduct within New York counsels against the exercise of personal jurisdiction. *Cf. Legros v. Irving*, 38 A.D.2d 53, 56 (1st Dep't 1971) (finding personal jurisdiction proper where "virtually all the work attendant upon publication of the book occurred in New York" including research, negotiation, and contract execution); *Sovik v. Healing Network*, 244 A.D.2d 985, 987 (4th Dep't 1997) (finding personal jurisdiction proper where "defendants . . . drafted the [defamatory] letter and either distributed or authorized the distribution of the letter in the Buffalo area and, thus, [had]

8

active involvement and personal control over the writing and distribution of the allegedly defamatory statement").

   *Second*, even assuming that Der Spiegel transacts business in New York, Donner's "cause of action" does not "'aris[e] from' that business transaction or transactions." *Best Van Lines*, 490 F.3d at 249. "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Id.* (citation omitted). Donner's claims "arise from" allegedly defamatory statements made by Der Spiegel in an article available worldwide, and not from the fact of Data Media Inc.'s use of a location in Buffalo, the ability of New Yorkers to access Der Spiegel's articles online, or the need for New York SPIEGEL+ subscribers to remit payment through PayPal or Visa.[4] *See Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827, 829 (1988) (defamation action based on letters sent by California residents about incident occurring at New York school did not arise out of defendants' transactions in New York, namely defendants' daughter's attendance at the New York school).

   We therefore conclude that Donner has failed to establish that personal jurisdiction over Der Spiegel is proper pursuant to CPLR §302(a)(1).

---

[4] In *Best Van Lines*, this Court rejected an argument that the receipt of payments from people within the United States, including in New York, was a sufficient basis for the exercise of personal jurisdiction, where there was "no articulable nexus, or a substantial relationship, between the [payments received] and the allegedly defamatory conduct." *Best Van Lines*, 490 F.3d at 254 (citation and quotation marks omitted).

## II.    CPLR §302(a)(4)

Personal jurisdiction over Der Spiegel is likewise improper under CPLR §302(a)(4).  Under that provision, a federal court in New York may exercise personal jurisdiction over a "non-domiciliary, . . . who in person or through an agent . . . owns, uses or possesses any real property situated within the state."  CPLR §302(a)(4).  A plaintiff seeking to establish jurisdiction under that section must show that her cause of action arises from the defendant's ownership, use, or possession of that real property.  *See Vaval v. Stanco, LLC*, 219 A.D.3d 1466, 1468 (2d Dep't 2023); *Zeidan v. Scott's Dev. Co.*, 173 A.D.3d 1639, 1640 (4th Dep't 2019).

Donner asserts that jurisdiction under §302(a)(4) is proper simply because Data Media Inc. uses an office in Buffalo to distribute issues of *Der Spiegel*.  However, as mentioned, Donner's causes of action arise out of Der Spiegel's allegedly defamatory statements in a specific article, and not out of the fact of Der Spiegel's or Data Media Inc.'s ownership, use, or possession of a Known Office of Publication in Buffalo.  *See Vaval*, 219 A.D.3d at 1468 (plaintiff asserting product liability claims arising out of faulty brake "failed to make a prima facie showing that the causes of action asserted against [defendant] arose from [defendant's] ownership of the New York property"); *Zeidan*, 173 A.D.3d at 1640 ("Although plaintiffs alleged that defendant . . . owns property in New York, there is no indication in the record that such ownership gave rise to plaintiffs' allegations of negligence at the water park [owned by defendant] in Pennsylvania.").

10

Accordingly, Donner has not shown that personal jurisdiction over Der Spiegel is proper under CPLR §302(a)(4).[5]

*      *      *

Because we affirm the District Court's holding as to the lack of personal jurisdiction under New York's long-arm statute, we do not analyze the propriety of jurisdiction under the Due Process Clause. We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[5] Because Donner's causes of action do not arise from the ownership or use of the Buffalo Known Office of Publication, we need not consider whether Data Media Inc.'s use of that location suffices to establish jurisdiction over Der Spiegel under agency principles.